IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DENNIS WOLLMAN, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 13-cv-037-CJP |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|       Defendant.[1] | ) |

**MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Dennis Wollman is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying him Disability Insurance Benefits (DIB).[2]

**Procedural History**

Plaintiff applied for benefits in December, 2009, alleging disability beginning on April 23, 2008. (Tr. 11). After holding an evidentiary hearing, Administrative Law Judge (ALJ) Robert G. O'Blennis denied the application for benefits in a decision dated September 22, 2011. (Tr. 11-19). Plaintiff's request for review was denied by the Appeals Council, and the September 22, 2011, decision became the final agency decision. (Tr. 1).

---

[1] Carolyn W. Colvin was named Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is automatically substituted as defendant herein. No further action is necessary to continue this action by reason of the last sentence of 42 U.S.C. §405(g). ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.")

[2] This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 9.

Plaintiff has exhausted his administrative remedies and has filed a timely complaint in this court.

### Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. The ALJ's written decision found mental limitations, but those limitations were not included in the hypothetical question posed to the vocational expert at the hearing.

2. The ALJ erred in not giving greater weight to the opinions of his treating physicians, Drs. LaBore and Keller.

3. The ALJ's assessment of plaintiff's residual functional capacity was conclusory and did not explain how the medical evidence supported the findings.

### Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).** "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement.

> The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.   **20 C.F.R. §§ 404.1520;** *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.   If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Secretary at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).   See also, *Zurawski v. Halter*, 245 F.3d 881, 886 (7$_{th}$ Cir. 2001)(Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   The scope of judicial review is

limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether Mr. Wollman was, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See, Books v. Chater, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing *Diaz v. Chater*, **55 F.3d 300, 306 (7th Cir. 1995)**). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Richardson v. Perales, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. **Brewer v. Chater, 103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, **Parker v. Astrue, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ O'Blennis followed the five-step analytical framework described above. He determined that Mr. Wollman had not been engaged in substantial gainful activity since the alleged onset date. He was insured for DIB through the date of the decision. The ALJ found that plaintiff had severe impairments of status post surgery at L5-S1, mild degenerative disc disease of the lumbosacral spine, partial left rotator cuff tear, type II diabetes, hyperlipidemia and mild depression controlled by medication. The ALJ further determined that plaintiff's impairments do not meet or equal a listed impairment.

ALJ O'Blennis concluded that Mr. Wollman had the residual functional capacity to

perform work at the light exertional level, with postural and environmental limitation, and limited to simple, routine, repetitive tasks with only occasional interaction with coworkers, supervisors and the general public. Based on the testimony of a vocational expert (VE), he determined that plaintiff could do his past work as a car salesman. In the alternative, he determined that plaintiff could perform other jobs which exist in significant numbers in the national and local economy. (Tr. 11-19).

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

**1.    Agency Forms**

Plaintiff was born in February, 1963, and was 45 years old on the alleged onset date.    He is insured for DIB through December 31, 2013.   (Tr. 219).   A prior application for DIB was denied in 1995.   (Tr. 220).

Mr. Wollman said he was unable to work because of spinal fusion at L5-S1, continuing weakness, numbness in legs, left rotator cuff tear, uncontrolled diabetes and right knee problems. (Tr. 223).   He had worked as a restaurant cook, dock worker, convention center facility worker, laborer, and car salesman.   (Tr. 225).

In a Function Report, plaintiff said that, in addition to physical difficulties, he had trouble with memory, completing tasks, concentration, understanding, following instructions and getting along with others.   (Tr. 265).   In a report dated May 20, 2010, plaintiff said that he was taking Wellbutrin for "mood-smoking."   (Tr. 284).   In August, 2010, he said that he was experiencing "more frustration, depression, anger."   (Tr. 297).

**2.** **Evidentiary Hearings**

Plaintiff was represented by counsel at the hearing on September 13, 2011.  (Tr. 27).

Mr. Wollman testified that, since his second back surgery, he had continual numbness and tingling going down his legs.  His feet feel like they have fallen asleep.  He said he cannot get comfortable.  His primary care physician told him not to lift more than 10 pounds.  (Tr. 30).  His surgeon released him with no limitations.  (Tr. 31).

He also had trouble with his shoulders.  His left rotator cuff was torn, and his right shoulder had been separated in the past.  He had difficulty at times raising his arms above shoulder level.  (Tr. 31-32).  Sometimes his knee feels like it is going to pop out of the socket.  (Tr. 35).

Mr. Wollman testified that his wife did all the household chores.  He passed the time watching television.  He had no health insurance.  (Tr. 32-33).

Anne Winkler, M.D., testified as a medical expert based on a review of the records and listening to plaintiff's testimony.  She testified that Mr. Wollman should be able to lift 50 pounds occasionally and 30 pounds frequently, stand/walk for 6 hours and had no limits on his ability to sit.  She was relying on the surgeon's opinion and on a functional capacity evaluation which had been done by a physical therapist.  (Tr. 40-42).

James Reid, Ph.D., a clinical psychologist, also testified as an expert based on a review of the record and the testimony.  He testified that Mr. Wollman had a history of depressive symptoms.  He saw no evidence of difficulties in concentration, persistence or pace.  He had moderate impairment of his activities of daily living, and mild impairment of social functioning resulting from moodiness and irritability.  (Tr. 46-47).

Lastly, a VE testified.  The ALJ's hypothetical question required the VE to assume a

person who was able to do work at the light exertional level, with the following limitations:

- Stand/walk and sit for 6 out of 8 hours;
- No climbing of ladders, ropes or scaffolding;
- Occasional climbing of ramps and stairs;
- Occasional stooping, crouching and crawling;
- No work above shoulder level bilaterally;
- No exposure to whole-body vibration, e.g., jackhammers; and
- No work at unprotected heights or around unprotected dangerous machinery.

(Tr. 59-60).

The VE testified that this hypothetical person could do Mr. Wollman's past work as a car salesman, but all of his other past work would be precluded.   He would also be able to do other jobs which exist in significant numbers, such as telemarketer, sorter and order clerk.   (Tr. 60-61).   Plaintiff's attorney then asked the VE if he understood that the hypothetical question posed by the ALJ assumed *no* work above shoulder level.   The VE said that he had understood the limitation to be *occasional* work above shoulder level.   He then testified that, if the person were limited to no overhead work, rather than occasional overhead work, he would not be able to do the car salesman job.   However, he could still do the sedentary telemarketing job.   (Tr. 64-65).

**3.**     **Medical Records**

On June 10, 2008, Mr. Wollman saw Dr. David Robson.   He gave a history of having injured his back at work on April 23, 2008.   He had back pain and bilateral radiating pain in his legs.   He had undergone physical therapy, but still had pain and was off work.   He had undergone a micro-discectomy in 2006 at L5-S1.   Dr. Robson noted that his psychiatric history was positive for depression, and he had adult onset diabetes.   He was 6 feet tall and weighed 195 pounds.

(Tr. 378-380).

MRI of the lumbar spine showed central herniation at L5-S1, dehydration of the disc and laminectomy defect on the right side.  (Tr. 377).  After an epidural injection of the back gave him only temporary relief, Dr. Robson recommended surgery.  (Tr. 376).

Dr. Robson performed a complete discectomy and inter-body fusion at L5-S1 on September 16, 2008.  (Tr. 381-382).  He did well immediately following the surgery, and attended physical therapy.  In December, 2008, he reported to Dr. Robson that he was having low back pain and very intermittent right leg pain, but he was much better than he had been before the surgery.  (Tr. 371).

In March, 2009, Dr. Robson noted that Mr. Wollman had a functional capacity examination at Apex Physical Therapy which showed he was capable of "a little bit higher than the medium range work."  However, in the course of the evaluation, he hurt his left shoulder.  (Tr. 368).  On April 2, 2009, Dr. Robson stated that Mr. Wollman had reached maximum medical improvement with respect to his back.  His x-rays looked excellent and he had a "solid fusion."  He was released without restrictions.  Dr. Robson recommended that his left shoulder be evaluated.  (Tr. 366).

Mr. Wollman was seen by Dr. Adam LaBore of Washington University Orthopedics for left shoulder pain on May 18, 2009.  Dr. LaBore noted a past history of depression, migraine headaches and diabetes.  (Tr. 416-417).  On July 10, 2009, an MRI of the left shoulder showed a partial tear of the rotator cuff.  (Tr. 421).  Dr. LaBore saw him again on August 31, 2009, and noted that a subacromial injection on July 27, 2009, gave him temporary improvement in his symptoms.  On exam, he continued to have left shoulder pain.  Dr. LaBore recommended a consultation with the shoulder surgery service.  (Tr. 422).

On August 31, 2009, Dr. LaBore said that plaintiff could return to work with restrictions of no lifting, pushing or pulling over 15 pounds; no overhead work; no outstretched motion; and no repetitive motions.  (Tr. 463).

Dr. Leesa Galatz evaluated plaintiff and concurred that the MRI showed a very small partial thickness rotator cuff tear.  On October 6, 2009, she recommended a trial of physical therapy.  (Tr. 426).  On November 25, 2009, Dr. Galatz noted that plaintiff had been doing well in physical therapy and was "almost maxed out."  He had a full range of motion, good strength and no tenderness over the AC joint.  She released him to return to work with no restrictions.  (Tr. 427).

Dr. Brian Keller of Washington University Physicians treated plaintiff as a primary care physician in the clinic at Barnes Jewish Hospital.  On October 19, 2009, he noted that plaintiff had not been taking his diabetes medication because he was unable to afford it.  He also noted that plaintiff had mood swings and reported periodically "blowing up" at his wife.  He had been on Cymbalta in the past.  Dr. Keller started him on diabetes medication.  (Tr. 497-499).  On October 29, 2009, Dr. Keller prescribed Wellbutrin to help him quit smoking.  (Tr. 495).  On December 12, 2009, Mr. Wollman told Dr. Keller that his employer's physician, i.e., the spine surgeon, had released him to return to work but he did not feel that he was able to return to manual labor.  He reported that he still had periodic pain radiating down his leg.  He also reported that his mood was more stable now that he was on Wellbutrin.  He denied psychiatric problems.  On exam, he had a full range of motion of the spine and appeared to ambulate normally.  He had decreased sensation in the right leg below the knee.  Sensation in the left leg was normal.  Dr. Keller referred him for a second opinion regarding his back.  (Tr. 485-487).

Dr. Spiros Blackburn reviewed his records, including an MRI report from September,

2010, in order to give a second opinion regarding plaintiff's back.   Dr. Blackburn advised Mr. Wollman that the MRI showed no disc collapse, normal alignment and no evidence of nerve root compression.   Dr. Blackburn concluded that additional surgery was not warranted, and he recommended physical therapy and pain management.   (Tr. 471).

Mr. Wollman saw Dr. Keller for follow-up on his diabetes and back pain on January 12, 2010.   He had stopped taking Wellbutrin because it was causing gastric upset.   With regard to his back pain, Dr. Keller noted that the second opinion had also cleared him to return to work and he was not currently on pain medications.   (Tr. 478-480).   On February 12, 2010, Dr. Keller again noted he was off pain medications.   (Tr. 580).

Plaintiff returned to Dr. Keller for follow-up of diabetes and back pain on September 14, 2010.   He reported that he had continued back pain.   His symptoms included leg numbness and mid-spine pain with occasional burning pain radiating down his right leg.   His mood correlated with his back pain.   His wife described him as "snappy."   On exam, straight leg raising was negative.   Sensation was intact to light sensation in both lower extremities.   Upper extremity strength was 5/5.   Lower extremity strength was 4/5.   He had full range of motion of both upper extremities and the neck.   It was again noted that the second opinion had also cleared him to return to work.   He had brought in social security paperwork to be filled out.   Dr. Keller prescribed Naproxen and Flexeril for his back pain.   The assessment included depression/dysthymia.   (Tr. 567-570).

Dr. Keller filled out a form on September 16, 2010, setting out his opinion that Mr. Wollman had severe functional limitations.   (Tr. 536-542).

The next visit with Dr. Keller was on November 10, 2010.   Plaintiff reported pain radiating into his right hip and tingling and numbness in both feet.   His mood correlated with his

back pain.  His wife suggested that he might benefit from an anti-depressant.  On exam, straight leg raising was negative and sensation to light touch was intact in both lower extremities.  However, on filament exam, sensation was absent on the soles of both feet and the lower legs.  Dr. Keller prescribed Effexor for depression.  (Tr. 559-561).  On November 30, 2010, plaintiff told Dr. Keller he had not been taking Effexor because he could not afford to fill the prescription.  Dr. Keller changed the prescription to a short-acting version which was cheaper.  (Tr. 551).  The doctor also wrote a letter, at plaintiff's request, clarifying that, in his opinion, plaintiff could only sit for 45 to 60 minutes at a time, and then needed to walk or stand for 5 to 10 minutes.  (Tr. 549).

The next visit with Dr. Keller was on May 27, 2011.  He was having headaches.  His back pain was controlled with medication but still had bouts of more severe pain.  He had been unable to afford Effexor for his depression.  He reported feeling like his wife would be better off without him, but denied suicidal ideation.  He had been unable to afford diabetes medication or test strips, so his diabetes had been untreated since the first of the year.  He was referred to the social work department for help with obtaining medications.  (Tr. 660-663).

On July 1, 2011, another doctor saw plaintiff in the clinic at Barnes Jewish Hospital.  It was again noted that he had depression/dysthymia.  (Tr. 671-673).

**4.**     **Consultative Examination**

Gregory Rudolph, Ph.D., performed a consultative psychological exam on April 13, 2010.  Dr. Rudolph reviewed a Function Report, but not, apparently, any of the medical records.  He stated that plaintiff "does not present any problems with depression."  He diagnosed only a history of alcohol and marijuana abuse, in remission.  (Tr. 506-509).

**5.**     **Psychiatric Review Technique Form[3]**

---

[3] The Psychiatric Review Technique form is part of the "special technique" used by the agency in

Based upon a review of the medical records, including Dr. Rudolph's report, a state agency psychologist concluded that plaintiff did not have a severe mental impairment. The consultant wrote, in all capital letters, "ALTHOUGHT CLAIMANT DOES NOT ALLEGE A MENTAL IMPAIRMENT, MER [medical evidence of record] DISCOSES HISTORY OF TREATMENT FOR DEPRESSION, SO A PRTF [Psychiatric Review Technique Form] IS NEEDED IN FILE." (Tr. 525-532).

## Analysis

The hypothetical question posed to the VE at the hearing did not include any mental limitations. See, Tr. 59-60. In his written decision, ALJ O'Blennis made contradictory findings about the presence of mental limitations. He noted that Dr. Keller "prescribed medication for what appeared to be a mild depression at times." (Tr. 14). In the first paragraph at Tr. 15, the ALJ set forth his findings as to Mr. Wollman's RFC. In addition to his physical limitations, the ALJ said that he was limited to work requiring "no more than simple, routine, repetitive tasks; or having more than occasional interaction with coworkers, supervisors or the general public." These mental limitations were not included in the hypothetical question to the VE. The ALJ repeated his RFC assessment in the "Findings" section of his decision in paragraph number 5 at Tr. 18-18. Here, after repeating that plaintiff was limited to only simple, routine work with no more than occasional interaction with other people, the ALJ stated, "There are no credible, medically-established mental or other nonexertional limitations."

Generally, the hypothetical question posed to the VE must include all of the limitations found by the ALJ to be credible. **O'Connor-Spinner v. Astrue, 627 F.3d 614, 619 (7th Cir. 2010), and cases cited therein.** Defendant does not argue to the contrary. Rather, she argues

---

evaluating alleged mental impairments. The special technique is explained in 20 C.F.R. §404.1520a.

that any error in omitting mental limitations from the hypothetical question was harmless because there is no evidence that Mr. Wollman needs mental limitations.  See, Doc. 18, pp. 9-11

The harmless error doctrine applies in review of administrative proceedings.  The ALJ's error in failing to ask the VE to assume that plaintiff is limited to simple, routine tasks and only occasional interaction with others is harmless only if it is "predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original decision failed to marshal that support, [so that] remanding is a waste of time."  *Spiva v. Astrue*, **628 F.3d 346, 353 (7th Cir. 2010).**

The Court must note that defendant says in her brief that plaintiff acknowledged in his brief that he does not have a severe mental impairment.  See, Doc. 18, p. 9.  The Court does not read plaintiff's brief that way.  As the Court reads it, plaintiff was pointing out that the ALJ said both that he had no severe mental impairment and that he had functional limitations arising from a mental impairment.  Further, the Commissioner incorrectly contends in her brief that Mr. Wollman "did not seek any treatment for mental difficulties."  See, Doc. 18, p. 9.  This statement is flatly contradicted by Dr. Keller's records.

For the Court to accept defendant's harmless error argument, it would have to, as the defendant puts it, "rely upon" the ALJ's statement that plaintiff had no mental or nonexertional limitations, and ignore his contradictory statements that plaintiff is limited to simple, routine tasks and only occasional interaction with others.  Doc. 18, p. 11.  However, under the *Chenery* doctrine, *SEC v. Chenery Corporation*, **318 U.S. 80, 87-88 (1943)**, the ALJ's decision can only be upheld on grounds relied upon by the ALJ.  See, *McClesky v. Astrue*, **606 F.3d 351, 354 (7th Cir. 2010) (It is "improper for an agency's lawyer to defend its decision on a ground that the agency had not relied on in its decision....");** *Parker v. Astrue*, **597 F.3d 920, 922 (7th Cir.**

**2010).**

In effect, defendant is asking the Court to rewrite the ALJ's decision based on her contention that there is no support in the record for the finding that plaintiff has mental limitations. Contrary to the defendant's contention, however, there is medical evidence that Mr. Wollman suffers from depression.   Further, the ALJ misstated the medical evidence when he said that plaintiff's depression was controlled by medication when he last saw Dr. Keller on May 27, 2011. (Tr. 14).   In fact, Dr. Keller noted on that date that plaintiff could not afford to fill his prescriptions and had taken no medication for depression or diabetes since the first of the year. (Tr. 660-663).

Simply put, this Court is required to review the ALJ's decision based on what the ALJ actually said, and not on a reinterpretation of the ALJ's decision based on the Commissioner's after-the-fact reweighing of the evidence.   The Court cannot ignore the fact that the ALJ found that Mr. Wollman is limited to work that requires "no more than simple, routine, repetitive tasks; or having more than occasional interaction with coworkers, supervisors or the general public." (Tr. 15).   Defendant's argument "seem[s] determined to dissolve the *Chenery* doctrine in an acid of harmless error."   ***Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).**   As the Seventh Circuit put it in ***Spiva***:

> The government implies that if the administrative law judge's opinion consisted of two words—"benefits denied"—a persuasive brief could substitute for the missing opinion. That is incorrect. It would displace the responsibility that Congress has delegated to the Social Security Administration—the responsibility not merely to gesture thumbs up or thumbs down but to articulate reasoned grounds of decision based on legislative policy and administrative regulation—into the Justice Department, which represents the agency in the courts. The *Chenery* doctrine "provides an assurance that the object of the court's review is the product of a body or official to whom Congress delegated authority. That constraint in turn polices the conditions for judicial deference to agency action." Kevin M. Stack, "*The Constitutional Foundations of Chenery,*" 116 Yale L.J. 952, 1021 (2007).

***Spiva, supra***.

Moreover, in the circumstances of this case, the omission of the mental limitations was significant. The ALJ found that plaintiff could do his past work as a car salesman; it seems readily apparent that a car salesman is required to have more than occasional contact with coworkers, supervisors and the general public. Further, the VE's testimony that plaintiff was able to work as a car salesman was predicated on the VE's misunderstanding of the hypothetical question in that the VE thought the ALJ limited plaintiff to occasional, rather than no, lifting of the arms higher than shoulder level. When plaintiff's counsel pointed out that the hypothetical question assumed *no* work above shoulder level, the VE testified that "there are situations in selling cars that that may come into play" and "past relevant work would become problematic." (Tr. 65). In the end, the only job he identified that would not require work above shoulder level was the sedentary telemarketing job. (Tr. 65). Again, it seems evident that a telemarketing job would require more than occasional interaction with the general public.

In conclusion, the Court cannot predict with great certainty that an ALJ on remand would not again assess mental limitations arising from depression. If plaintiff has mental limitations, those limitations must be presented to the VE for consideration. ***O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619   (7th Cir. 2010), and cases cited therein.**

Because of the ALJ's errors, this case must be remanded. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Mr. Wollman is disabled or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Dennis Wollman's application for social

security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of **42 U.S.C. §405(g).**

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:   October18, 2013.**


<u>s/ Clifford J. Proud</u>
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**